IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**PATRICIA M.,**

      **Plaintiff,**

v.                                                                                      No. 1:24-cv-00151-JHR

**LELAND DUDEK,**
**Acting Commissioner of Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DENYING PLAINTIFF'S MOTION TO REMAND [DOC. 15].

Before the Court is Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 15]. The Commissioner of the Social Security Administration filed a response [Doc. 20] and Plaintiff replied [Doc. 21]. Pursuant to 28 U.S.C. § 636(c) and Rule 73(b), the parties consented to Magistrate Judge Jerry Ritter presiding over Plaintiff's challenge to the Commissioner's final decision. [Doc. 9]. The Court has reviewed the parties' briefing, the administrative record, [Doc. 10] ("AR"), and applicable law. The Court **DENIES** Plaintiff's motion to remand and **AFFIRMS** the Commissioner's final decision.

### I.    PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income pursuant to Title XVI of the Social Security Act on November 9, 2017, alleging disability due to conditions including breast cancer, panic attacks, anxiety, depression, and PTSD. (AR 66, 131). The Commissioner denied her application on August 27, 2018, and again on upon reconsideration on April 5, 2019. (AR 131, 140). Plaintiff requested a review hearing before an administrative law judge ("ALJ"). (AR 145). On February 12, 2020, ALJ Jennifer Fellabaum conducted a hearing and determined on April 22,

1

2020, that Plaintiff did not qualify for supplemental security income. (AR 16–33). The Administration's Appeals Council denied Plaintiff's request for further review, making the ALJ's decision the final decision of the Commissioner. (AR 5–7).

Plaintiff appealed to the U.S. District Court of New Mexico pursuant to 42 U.S.C. § 405(g). The Court reversed the Commissioner's decision because the ALJ improperly evaluated the medical opinion offered by consultative examiner Dr. Amy DeBernardi, Psy.D. (AR 1331–46). The Court remanded to the ALJ for a rehearing which was held on September 21, 2023. (AR 1267–94). The ALJ again found that Plaintiff did not qualify for supplemental security income, and Plaintiff appealed the decision directly to the Court pursuant to 20 C.F.R. § 416.1484(d). (AR 1257); [Doc. 1].

## II.     STANDARD OF REVIEW

When a party appeals an adverse disability decision the court will affirm if the ALJ applied correct legal standards and supported her factual findings with "substantial evidence." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). Review calls for common sense, setting aside technicalities to determine whether the court can follow the ALJ's reasoning and application of law. *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Failure to follow legal standards will warrant reversal "independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). Some errors may be harmless, however, if the ALJ's findings as a whole are sufficiently thorough and supported by the record. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

Evidence is "substantial" when a reasonable mind would accept it as adequate support for a conclusion—in comparative terms, more than a scintilla but less than a preponderance. *Lax v.*

*Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). To determine if the ALJ met the standard, the court must examine the whole record including any evidence that may undercut or detract from the findings. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). But the court may not "reweigh the evidence nor substitute its judgment for that of the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Even if the court would resolve the matter differently, it must affirm unless the record overwhelms the factual findings or the decision rests on unsupported conclusions. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

### III.    THE COMMISSIONER'S FINAL DECISION

A claimant who seeks supplemental security income under the Social Security Act must demonstrate that she cannot engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A five-step process guides whether the claimant satisfies that definition of disability. 20 C.F.R. § 416.920(a)(4).[1] 1 Those five steps address (1) whether the claimant is still engaged in substantial gainful activity; (2) whether the claimant is suffering from any impairments significantly limiting her ability to perform basic work activities; (3) whether those impairments meet or equal the criteria of a disabling impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant's residual functional capacity ("RFC"), or her ability to sustain work-related activities regularly in a work setting, would preclude her from her past relevant work, and finally; (5) whether the claimant's age, education, experience, and RFC would enable her to perform a

---

[1]Regulations for determining whether a claimant is disabled for both disability insurance benefits (DIB) and supplemental security income (SSI) are identical but codified in two separate parts in the Code of Federal Regulations. Part 404 of Title 20 governs DIB while Part 416 governs SSI. The Court cites the applicable regulations in Part 416, but the analogous regulations in Part 404 apply as well.

3

substantial gainful activity existing in significant numbers in the national economy. *Id.* In sum, a claimant qualifies for supplemental security income if her medical impairments are per se disabling or otherwise prevent her from performing her past work and any other viable work option. *See* 20 C.F.R. § 404.1505(a).

A.      **Steps One, Two, and Three.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date, November 9, 2017. (AR 1239). At step two, the ALJ found that Plaintiff suffered severe impairments: depression, anxiety, PTSD, ADHD, borderline personality disorder, bilateral knee osteoarthritis, peripheral neuropathy bilateral feet, breast cancer, and migraines. (AR 1240). The ALJ's step two findings included non-severe impairments: thyroid disorder (Hashimoto's), obstructive sleep apnea, diabetes mellitus, obesity, internal hemorrhoids, diverticula, COVID, and "thoracic and lumber degenerative changes." *Id.* At step three, the ALJ compared Plaintiff's severe impairments to the listed impairments in the first appendix of subpart P, 20 C.F.R. § 404, and determined that none of Plaintiff's impairments constituted per se disability. *Id.*

The ALJ also considered whether Plaintiff's mental impairments constituted per se disability under the "paragraph B" criteria. *See* 20 C.F.R. § 416.920a(c)(3). The ALJ must identify limitations in four broad functional areas: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* The ALJ rates any limitation as either none, mild, moderate, marked, or extreme. 20 C.F.R. § 416.920a(c)(4). If a claimant has one extreme limitation or two marked limitations in these functional areas, and other criteria are met, they may satisfy a listed disability. *Ricks v. Kijakazi*, No. 21-cv-00942, 2023 WL 2706569, at *5 (D.N.M. Mar. 30, 2023).

A moderate limitation means a claimant retains a "fair" ability to function in the area independently, appropriately, and effectively. *Id.*

The ALJ discussed Plaintiff's hearing testimony and self-reports, two consultative psychological evaluations, psychiatric treatment notes, and treatment history. (AR 1242–43). She concluded Plaintiff had (1) a moderate limitation in understanding, remembering, or applying information, (2) a marked limitation in interacting with others, (3) a moderate limitation in concentrating, persisting, or maintaining pace, and (4) a moderate limitation in adapting or managing herself. *Id.* The ALJ assessed a marked limitation for Plaintiff's interacting with others based on examinations noting a tense, anxious, and depressed demeanor and Plaintiff's aversion to being around other people. (AR 1242). On the other hand, the ALJ noted that Plaintiff reported she did not have difficulties getting along with others and that she was otherwise pleasant and cooperative with physicians and maintained personal relationships through phone and text. *Id.*

**B.   RFC Assessment.**

Because the ALJ determined that none of Plaintiff's impairments qualified per se as disabling, she went on to determine Plaintiff's RFC. (AR 1244). The ALJ concluded that Plaintiff could perform "light work," pursuant to 20 C.F.R. § 416.967(b),[2] with the following descriptors:

> She can occasionally crouch, kneel, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights or hazardous machinery; can occasionally use foot controls bilaterally; cannot operate a motor vehicle for commercial purposes; can perform simple routine tasks, with no fast paced assembly line work; she is able to make simple work decisions; her work should be performed in the same location every day; she can occasionally interact with co-workers and supervisors, but rarely interact with the general public,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

5

>defined as less than 10% of the work day; and she cannot perform team or tandem tasks or customer service work.

*Id*. To support her determination, the ALJ reviewed and discussed the following evidence in the record.

>1.   Plaintiff's testimony and examination, treatment history.

The ALJ began with Plaintiff's testimony that her mental health had worsened since her previous hearing with auditory and visual hallucinations and increasing depression and anxiety. (AR 1244). Plaintiff stated she saw a psychiatrist once a month, to limited benefit, and took five separate medications that "help[ed] but did not cure." *Id*. Plaintiff would use caffeine pills, two medications, and Botox to treat migraines that had not improved and would receive steroid shots if they ever became severe. *Id*. Otherwise, when experiencing a migraine Plaintiff would lie down in a dark quiet room for several hours. (AR 1245). Plaintiff was forced to order her groceries online and interact with others via phone, and she did not see her children or grandchildren except briefly for grocery deliveries. (AR 1244–45). Household chores were difficult to manage due to pain, anxiety prevented her from driving, and her diabetes could cause significant difficulties when her blood sugar dropped or spiked. (AR 1245). Plaintiff managed personal care activities but noticed an impact from her mental health decline and needed physical therapy for back pain. *Id*. PTSD caused her to scare at loud noises and sounds, and she could not sustain concentration for more than five to ten minutes. *Id*.

After summarizing Plaintiff's testimony, the ALJ cited her examination and treatment records for breast cancer, neuropathy, knee pain, obesity, and range of motion. *Id*. Relevant to Plaintiff's appeal, the ALJ discussed Plaintiff's migraine headaches that began during her chemotherapy in 2017. (AR 1246). Plaintiff had seen a neurologist and reported significant relief from abortive medications and Botox injections. *Id*. She received nerve block injections on three

occasions, the last being November 2020. The ALJ concluded Plaintiff's migraine symptoms were ameliorated and controlled by treatment. *Id.*

The ALJ proceeded to consider Plaintiff's mental impairments. *Id.* Dr. DeBernardi's June 2018 mental status examination noted a cooperative and pleasant demeanor, though Plaintiff displayed some anxiety and tenseness, without evidence of "psychomotor agitation or retardation." *Id.* Plaintiff reported suicidal ideation with no intent or plan but denied hallucination or homicidal ideation. *Id.* Plaintiff stated she could clean and cook, handle her self-care regularly, budget and pay her bills, and spend time occasionally with her daughter and grandchildren. (AR 1247). However, Plaintiff could not tolerate crowds. Similar findings were made by Dr. Barbara May-Valencia in a second consultative psychological evaluation in March 2019. *Id.*

With primary care in 2018 and 2019, Plaintiff reported she could manage her symptoms with relaxation. *Id.* Resuming psychiatric treatment in 2020, Plaintiff began medications that she reported made her feel "much better" and improved her sleeping and anxiety. *Id.* The ALJ concluded that symptom improvement and management characterized the overall trend in Plaintiff's treatment, albeit punctuated by some physical issues, anxiety, hallucinations, and adjustments to her medications. *Id.* The ALJ noted that in 2023 Plaintiff reported worse symptoms of anxiety and continued agoraphobia, panic attacks, mania, and hallucinations but found it "significant" that she had not required any emergency room treatment or hospitalization. *Id.*

Thus, the ALJ found the record did not support the intensity, persistency, and limiting effect of Plaintiff's physical and mental limitations that she claimed. (AR 1248). The ALJ summarized that Plaintiff's improvement with medication, her decision not to pursue more drastic treatment options, and a lack of support from the findings of physicians all undercut her claimed level of incapacity. *Id.*

    2.    <u>The medical opinions on Plaintiff's functional limitations.</u>

The ALJ discussed the medical opinions offered by state agency medical consultants Drs. Sam Baker and Karl Boatman, state agency psychologists Drs. Kathleen Padilla and Deanna Gallavan, consultative physician Dr. Athanasios Manole, Drs. DeBernardi and May-Valencia, and Dr. Kader Abdelerahman. (AR 1249–55). The ALJ addressed two opinions given by Abdelerahman, one from 2020 and the other from 2023.

In his 2020 opinion, Abdelerahman concluded Plaintiff had moderate limitations in maintaining concentration for extended periods, regular attendance, and a consistent work pace without unreasonable interruption due to her migraines. (AR 1254). The ALJ described the opinion as "somewhat persuasive," concluding Abdelerahman's treatment notes supported his opinion but Plaintiff's migraine treatment history in general demonstrated that the effects of Plaintiff's migraines could be "well controlled." *Id.* Regardless, the ALJ found Abdelerahman's opinion on Plaintiff's limitations consistent with the "moderate mental limitations" the ALJ had assessed earlier in her decision. *Id.*

In his 2023 opinion, Abdelerahman found the impact of Plaintiff's migraines more severe, precluding Plaintiff from performing basic work activities, requiring several long, unscheduled breaks to manage, and preventing her from maintaining regular attendance. *Id.* The ALJ found that opinion "not persuasive," stating Abdelerahman's treatment notes of improvement in headaches with abortive medications, Botox, and nerve block injections contradicted the severity of pain his opinion endorsed. *Id.* Furthermore, Abdelerahman's 2023 opinion failed to identify any material difference in treatment or reported symptoms compared to his 2020 opinion in which he assessed more moderate limitations. (AR 1255). Finally, the ALJ noted that Plaintiff had not sought an

emergency room visit nor obtained additional steroid shots, her treatment strategy when her headaches grew severe. *Id.*

The ALJ completed her RFC analysis by referencing the "third-party function reports" from Plaintiff's friends, stating they were nonmedical evidence that did not require an articulation of their persuasiveness pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. *Id.*

**C.    Steps Four and Five.**

At step four, relying on the testimony of the vocational expert, the ALJ determined that Plaintiff's past relevant work as a dispatcher was precluded by her RFC. *Id.* The ALJ proceeded to step five and concluded that Plaintiff's RFC, age, education, and work experience would allow her to perform jobs existing in significant numbers in the national economy, including office helper, housekeeper, and material distributer. (AR 1256). The ALJ relied on both the vocational expert's testimony and the Dictionary of Occupational Titles. *Id.* Based on all of her findings, the ALJ concluded that Plaintiff did not have a "disability" as defined by the Social Security Act and therefore did not qualify for supplemental security income.

## IV.    BRIEFING SUMMARY

On appeal, Plaintiff challenges the ALJ's formulation of her RFC in three ways. First, Plaintiff argues the ALJ improperly weighed Abdelerahman's medical opinions. [Doc. 15, at 5]. Plaintiff asserts that the ALJ failed to discuss and incorporate Abdelerahman's 2020 finding of Plaintiff's limitation in attendance, punctuality, or ability to keep pace without requiring additional breaks despite describing the opinion as "somewhat persuasive." *Id.* at 7. Plaintiff concludes the ALJ's RFC did not account for Plaintiff's struggles to satisfy a critical component of maintaining employment in unskilled work. *Id.* at 9. For Abdelerahman's 2023 opinion, Plaintiff argues that

9

the ALJ overlooked exhibits in the record supporting his conclusion that Plaintiff suffered worsening and disabling migraine symptoms. *Id.* at 10–12.

Second, Plaintiff argues that the ALJ improperly discounted her subjective reports about her migraine symptoms. *Id.* at 12. Plaintiff claims a multitude of evidence supports the severity of her pain and its impact on her daily activities and the ALJ did not incorporate her migraines into the RFC. *Id.* at 17. Third, Plaintiff argues the ALJ failed to perform a "function-by-function" assessment of her mental limitations in the RFC, causing underestimation of how her interpersonal struggles affect her interactions with coworkers and supervisors. *Id.* at 19–24.

The Commissioner responds that the ALJ discussed the evidence and explained the persuasiveness of Abdelerahman's opinions, the credibility she gave Plaintiff's migraine-related testimony, and the RFC's limits on interactions with coworkers and supervisors. [Doc. 20, at 10–23]. Therefore, according to the Commissioner, the ALJ applied the correct legal standards and Plaintiff improperly invites the Court to reweigh the evidence. *Id.* Plaintiff replies that the Commissioner mischaracterizes her challenges as evidentiary when in fact the ALJ did not adequately explain her decision as required by law. [Doc. 21, at 2–12].

## V. ANALYSIS

**A.    The ALJ Properly Reviewed Abdelerahman's Opinions and Adequately Discussed Their Persuasiveness.**

1.    Relevant law for review of medical opinions.

The ALJ must review all proffered medical opinions on a claimant's limitations as part of the whole record and explain how they influenced her RFC assessment. *Vigil*, 805 F.3d at 1201–02. Factors for review include the doctor's examining and treatment relationship with the claimant, support for the opinion, its consistency with the record as a whole, the specialization of the doctor, and any other important consideration. 20 C.F.R. § 416.920c(c). The most critical factors are

10

supportability and consistency. 20 C.F.R. § 416.920c(b)(2). The ALJ need not discuss every factor so long as she adequately supports the persuasiveness that she assigns the opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ may not, without explanation, downplay, mischaracterize, or cherry-pick elements from a medical opinion or fail to discuss uncontroverted or significantly probative evidence. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018).

2.  <u>The ALJ properly analyzed Abdelerahman's 2020 opinion.</u>

The ALJ applied the correct legal standards and supported her assessment of Abdelerahman's 2020 opinion with substantial evidence. Plaintiff argues the ALJ's erred by not adopting the opinion's moderate limitation in attendance, punctuality, or ability to keep pace without requiring additional breaks despite finding the opinion "somewhat persuasive." [Doc. 15, at 8–9]. However, "somewhat" does not mean "completely." The ALJ explained that the 2020 opinion was persuasive to the extent it coincided with treatment notes reflecting Plaintiff's migraine symptoms could be "well controlled" by abortive medications and Botox. *Id.* Furthermore, the ALJ accepted the opinions of psychologists Padilla and Gallavan that Plaintiff could maintain a normal work schedule under appropriate conditions. (AR 1249, 1254). Thus, the ALJ's reasoning with respect to Abdelerahman's 2020 opinion is traceable and employs appropriate legal factors. 20 C.F.R. § 416.920c(c); *see Keys-Zachary*, 695 F.3d at 1166.

Plaintiff disputes the ALJ's reliance on the state agency psychologists, arguing they focused on mental limitations while Abdelerahman addressed the physical pain of migraines. [Doc. 15, at 9]; [Doc. 21, at 7].[3] The Court understands the ALJ's reasoning to be that limitations, or lack thereof, caused by Plaintiff's migraine pain were "not inconsistent" with the limitations caused by

---

[3] This argument was originally connected to the ALJ's treatment of Abdelerahman's 2020 opinion but was asserted in Plaintiff's reply for Abdelerahman's 2023 opinion.

11

Plaintiff's mental impairments. *See* (AR 1254). Abdelerahman's 2020 opinion did not persuade the ALJ that Plaintiff's migraines would cause greater issues with attendance, punctuality, or pace than her other impairments already did. *Id.*

Finally, Plaintiff argues the fact the ALJ did not incorporate any explicit punctuality restrictions into the RFC warrants reversal, citing previous decisions of this Court like *Cruz v. Kijakazi*, *Gutierrez v. Kijakazi*, and *Salazar v. Kijakazi* [Doc. 15, at 8–9]; [Doc. 21, at 4–5]. However, those cases concerned the failure of an ALJ to either explain the extent of their adoption of a medical opinion or incorporate an opined limitation they found persuasive. *Cruz*, No. 20-cv-01162, 2022 WL 970153, at *5 (D.N.M. Mar. 31, 2022); *Gutierrez*, No. 20-cv-00552, 2021 WL 4710508, at *6 (D.N.M. Oct. 8, 2021); *Salazar*, No. 21-cv-00149, 2022 WL 4365864, at *7 (D.N.M. Sept. 21, 2022). In this case, the ALJ adequately explained her limited adoption of Abdelerahman's 2020 opinion.

3.   <u>The ALJ properly analyzed Abdelerahman's 2023 opinion.</u>

The ALJ applied the correct legal standards and adequately supported her analysis of Abdelerahman's 2023 opinion as well. The ALJ did not find persuasive the more severe migraine-induced limitations Abdelerahman assessed. (AR 1255). The ALJ cited in support Abdelerahman's treatment notes from 2020–2023, concluding they did not reflect decline in the efficacy of Plaintiff's treatment regime. The ALJ again noted that Plaintiff did not pursue the more intensive treatments that had helped before. *Id.* The ALJ concluded Abdelerahman did not justify the more severe limitations he assessed to Plaintiff in 2023. *Id.*

Plaintiff argues the ALJ's explanation fails because Plaintiff's treatment history showed that her migraines worsened as treatment became less effective or caused intolerable side effects. [Doc. 15, at 9–11]. Plaintiff points to Abdelerahman's notes between 2020 and 2023 showing her

12

migraines had, at times, worsened with mild or no relief from her medications. (AR 1180, 2151, 2165, 2183–85, 2355). Plaintiff cites similar pre-2020 treatment notes. (AR 876, 882). However, the ALJ reviewed and did not neglect evidence suggesting Plaintiff suffered chronic migraine pain with little improvement at times. (AR 1252, 1254). The evidence of the migraines' severity, in combination with other impairments, led her to reject several opinions that would have supported less severe physical limitations than the ALJ ultimately included in the RFC. (AR 1249, 1251). Rather, it was evidence of Plaintiff's improvement from other medications and non-pursuit of hospitalization, emergency treatment, or steroid injections successful in 2020 that convinced the ALJ that Plaintiff's migraine pain was not disabling. (AR 1254–55). Ultimately, Plaintiff's assertion of resilient but fluctuating migraines and the ALJ's conclusion of improved and managed migraines reflect divergent yet reasonable interpretations of the record. Under the pertinent legal standard, the ALJ supported her assessment of Abdelerahman's 2023 opinion with substantial evidence. *Oldham*, 509 F.3d at 1257–58.

**B.      The ALJ Adequately Assessed Plaintiff's Subjective Reports of Pain.**

     1.      <u>Relevant law for assessing a claimant's subjective reports of pain.</u>

The ALJ first must determine whether objective medical evidence confirms the presence of an impairment that one could reasonably expect to cause the reported pain. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (discussing factors endorsed by *Luna v. Bowen*). Then, the ALJ must evaluate the credibility of the pain's reported intensity against the entire record. *Id.* Factors may include the medications taken by the claimant and their reported effectiveness, the claimant's attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, "subjective measures" of a claimant's credibility when testifying, and the consistency of evidence. *Id.* at 1145 (citing *Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004)). Courts will not

disturb a credibility determination, the "province of the finder of fact," so long as the ALJ offers specific justification supported by substantial evidence. *Hackett*, 395 F.3d at 1173 (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

    2.    <u>The ALJ properly assessed the credibility of Plaintiff's reported migraine pain.</u>

The ALJ appropriately assessed and adequately supported the credibility she gave Plaintiff's reports of migraine pain. The ALJ recognized Plaintiff's migraines as a pain-inducing impairment supported by objective medical evidence. (AR 1240, 1246). However, the ALJ concluded that Plaintiff's reports of the intensity, persistence, and limiting effects of her migraine pain were unpersuasive. (AR 1248). Echoing Abdelerahman's opinions, the ALJ cited a reduction in Plaintiff's migraine frequency and severity and Plaintiff's non-pursuit of more serious treatment despite past success. (AR 1246, 1248). These reasons are specific, non-conclusory, and based on valid credibility factors. *See Wilson*, 602 F.3d at 1145.

Plaintiff says the ALJ ignored her symptoms entirely by failing to connect her migraine pain to any of her RFC restrictions. [Doc. 15, at 17]. She also says the ALJ misinterpreted natural fluctuations in her severe migraine pain as proof of symptom control. [Doc. 21, at 9]. Neither argument is persuasive.

First, the ALJ did include Plaintiff's migraines in her RFC assessment. As the ALJ wrote:

> Given the combination of [Plaintiff's] impairments, including breast cancer with neuropathy, bilateral knee osteoarthritis, *migraine headaches*, diabetes with low blood sugar levels at times, and obesity . . . I find the claimant has been limited to light work with occasional climbing ramps and stairs, crouching, kneeling, and crawling . . .

(AR 1246) (emphasis added). Thus, the ALJ concluded that light work with the additional restrictions above captured the impact of Plaintiff's migraines on her work capacity. While the ALJ may not have separately discussed migraines, Plaintiff cites no law stating the same work restriction cannot account for multiple impairments. In addition, individualized discussion of

14

impairments is unnecessary when the Court can discern the ALJ's reasoning. *See Keys-Zachary*, 695 F.3d at 1166.

Plaintiff argues that the ALJ nevertheless erred by failing to discuss conflicting evidence in the record of her persistent pain. [Doc. 21, at 9]. Plaintiff's argument, however, effectively repeats the same regarding the ALJ's assessment of Abdelerahman's 2023 opinion. *See* Part V.A.3, *supra*. The ALJ considered the history of Plaintiff's migraines and concluded, with substantial evidence, that treatment sufficiently controlled Plaintiff's pain to allow her to work in a limited capacity.

**C.     The ALJ Appropriately Assessed, Function by Function, Plaintiff's Ability to Interact with Others.**

1.     Relevant law for the "function-by-function" assessment of the RFC.

An ALJ must determine a claimant's RFC through a "function-by-function" assessment of all relevant evidence of their ability to perform work-related activities. *Hendron*, 767 F.3d at 956. The ALJ must first identify, with specific, legitimate support, a claimant's functional limitations or restrictions then assess how they impact both physical and mental work-related activities. SSR 96-8p, 1996 WL 374184, at *1; *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003). The ALJ may then express the claimant's exertional and non-exertional work capacity based on her findings. SSR 96-8p, 1996 WL 374184, at *3–5. Mental-specific work-related abilities include "responding appropriately to supervision, coworkers, and work pressures." 20 C.F.R. § 416.945(c).

The RFC assessment is a separate analysis from the ALJ's step two determination of a claimant's mental impairments. *See* SSR 96-8p, 1996 WL 374184, at *4. Therefore, the ALJ does not need to translate every mental limitation found at step two into a corresponding work restriction in the RFC. *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). Rather, the ALJ must explain how a claimant's impairments are expressed and how they impact her work capacity. *See id.* Thus,

15

an ALJ only errs if she fails to explain a clear inconsistency between a claimant's step two limitations and the RFC. *See Vigil*, 805 F.3d at 1203–04.

> 2. <u>The ALJ adequately supported her RFC assessment with respect to Plaintiff's ability to interact with coworkers and supervisors.</u>

The ALJ at step two found that Plaintiff had a marked limitation in interacting with others. (AR 1242). The ALJ then concluded in her RFC assessment Plaintiff could (1) occasionally interact with coworkers and supervisors, (2) rarely interact with the general public for less than 10% of the workday, and (3) never work on team or tandem tasks or in customer service. (AR 1242, 1244). Plaintiff argues the ALJ erred because she failed to explain how an individual suffering from a marked limitation in social interaction could still "occasionally" interact with coworkers and supervisors. [Doc. 15, at 20]; [Doc. 21, at 11–12]. As support Plaintiff cites DeBernardi's opinion, the opinions of the Administration's non-examining psychologists, and Plaintiff's reports of agoraphobia and serious fights in her interpersonal relationships. [Doc. 15, at 21–24]. Because a marked limitation means the inability to "usefully perform or sustain" the activity in question, Plaintiff contends the ALJ overstated Plaintiff's capacity for social interaction. *Id.* at 25 (citing *Jaramillo v. Saul*, No. 19-cv-00488, 2020 WL 6781789, at *4 (D.N.M. Nov. 18, 2020)).

However, the ALJ's RFC incorporates the step two marked limitation in interacting with others. As the ALJ explained, the marked limitation came primarily from Plaintiff's struggles with crowds and public settings. (AR 1242). Otherwise, the ALJ noted evidence, including Plaintiff's representations, that Plaintiff had more success getting along one on one. *Id.* The ALJ also found

16

persuasive the agency psychologists' opinions that Plaintiff could manage interactions with coworkers, supervisors, and the general public on an incidental basis.[4] (AR 1249, 1251).

Thus, the Court can trace the reasoning of the ALJ's function-by-function assessment for Plaintiff's social interactions at work. *Keys-Zachary*, 695 F.3d at 1166. Since Plaintiff's aversion to crowds and group settings drove step two's marked limitation, the ALJ eliminated team, tandem, and customer service work. (AR 1258). The ALJ also tightly restricted encounters with the public. *Id.* Then, because evidence showed Plaintiff had an easier time with narrower interpersonal interactions, the ALJ adopted lighter but still substantial restrictions for contact with coworkers and supervisors. *Id.* The mere presence of conflicting evidence does not prove the ALJ did not consider that evidence or substantially support her conclusion. *Compare* [Doc. 15, at 22], *with* (AR 1242–43) (discussing same exhibits raised by Plaintiff); *Oldham*, 509 F.3d at 1257–58.

## VI.   CONCLUSION

The Court concludes that the ALJ followed the appropriate legal standards and supported her findings with substantial evidence. Therefore, the Court **AFFIRMS** the final decision of the Commissioner and **DENIES** Plaintiff's motion to remand.

IT IS SO ORDERED.

> Hon. Jerry H. Ritter
> United States Magistrate Judge
> Presiding by Consent

---

[4] Plaintiff argues there is a meaningful difference between "incidental" and "occasional" interaction. [Doc. 15, at 21]. However, Plaintiff does not cite any authority suggesting "incidental" contact is less frequent or otherwise materially distinguishable from "occasional" contact. *Duran v. Berryhill*, No. 18-cv-00349, 2019 WL 1568139, at *4 (D.N.M. Apr. 11, 2019).