IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ARTURO B.,**

      **Plaintiff,**

**v.**      No. 1:24-cv-00075-JHR

**LELAND DUDEK,**
**Acting Commissioner of Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DENYING PLAINTIFF'S MOTION TO REMAND [DOC. 16].

Before the Court is Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 16] ("motion to remand"). The Commissioner of the Social Security Administration filed a response [Doc. 20] and Plaintiff replied [Doc. 21]. Pursuant to 28 U.S.C. § 636(c) and Rule 73(b), the parties consented to the undersigned resolving Plaintiff's motion to remand. [Doc. 10]. The Court has reviewed the parties' briefing, the administrative record, [Doc. 11] ("AR"), and applicable law. The Court **DENIES** Plaintiff's motion to remand and **AFFIRMS** the Commissioner's final decision.

### I.    PROCEDURAL BACKGROUND

Plaintiff filed for disability benefits under Title II of the Social Security Act on April 23, 2019, alleging disability due to impairments including cancer, depression, and anxiety. (AR 83, 105). The Commissioner denied his application on August 22, 2019, and again upon reconsideration on March 27, 2020. (AR 105, 114). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 48). After a hearing held on March 3, 2021, ALJ Jeffrey

Holappa found Plaintiff did not qualify for disability benefits via written decision issued April 5, 2021. (AR 27–37).

The Administration's Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 864). Plaintiff appealed to the U.S. District Court of New Mexico pursuant to 42 U.S.C. § 405(g). (AR 873). The Court reversed the Commissioner's decision and remanded to the Administration on December 15, 2022, to consider new, material, and chronologically pertinent evidence: the medical opinion of psychiatrist Dr. Evan J. Skow completed on May 25, 2021. (AR 874–92). Plaintiff appeared before ALJ Michael Leppala for a rehearing on September 13, 2023. (AR 832). The ALJ found Plaintiff did not qualify for disability benefits in a written decision issued September 26, 2023. (AR 810–23). Pursuant to 20 C.F.R. § 404.984(d), Plaintiff appealed directly to the Court on January 23, 2024. [Doc. 1].

## II.    STANDARD OF REVIEW

When a party appeals an adverse disability decision the court must affirm if the ALJ applied correct legal standards and supported his factual findings with "substantial evidence." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). Review calls for common sense by setting aside technicalities in favor of whether the court can follow the ALJ's reasoning and application of law. *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Failure by the ALJ to follow legal standards will warrant reversal under appropriate circumstances "independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). At the same time, some errors may be harmless if the ALJ's findings are sufficiently thorough and supported by the record. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

Evidence is "substantial" when a reasonable mind would accept it as adequate support for the ALJ's conclusion—more than a scintilla but less than a preponderance of the record. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The reviewing court must examine the whole record to determine if the ALJ met that standard including any evidence that may undercut or detract from his findings. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). But the court may neither "reweigh the evidence nor substitute its judgment for that of the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The court must affirm, even if it would resolve the matter differently, unless the record overwhelms the ALJ's factual findings or his decision rests on unsupported conclusions. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

### III.     THE COMMISSIONER'S FINAL DECISION

A claimant who seeks disability benefits under the Social Security Act must demonstrate that he cannot engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A five-step process guides whether the claimant satisfies that definition of disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v).[1] 1 Those five steps ask (1) whether the claimant is still engaged in a substantial gainful activity; (2) whether the claimant is suffering from any impairments significantly limiting his ability to perform basic work activities; (3) whether those impairments meet or equal the criteria of a listed disabling impairment; (4) whether the claimant's residual functional capacity ("RFC"), or his ability to sustain work-related activities regularly in a work

---

[1]Regulations for determining whether a claimant is disabled for both disability insurance benefits (DIB) and supplemental security income (SSI) are identical but codified in two separate parts in the Code of Federal Regulations. Part 404 of Title 20 governs DIB while Part 416 governs SSI. The Court cites the applicable regulations in Part 404, but the analogous regulations in Part 416 apply as well.

setting, would preclude him from his past relevant work, and finally; (5) whether the claimant's age, education, experience, and RFC would enable him to perform a substantial gainful activity existing in significant numbers in the national economy. *Id.* In sum, a claimant qualifies for disability insurance if his medical impairments are per se disabling or otherwise prevent him from performing his past work and any other viable work option. *See* 20 C.F.R. § 404.1505(a).

**A.      Steps One, Two, and Three.**

At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024, and had not engaged in substantial gainful activity since the alleged onset date of March 4, 2019. (AR 812–13). At step two, the ALJ found that Plaintiff suffered from the severe impairments of cervical arthritis, lumbosacral spondylosis, right renal cell carcinoma, obesity, anxiety, and depression. (AR 813). The ALJ did not identify any non-severe impairments. At step three, the ALJ determined that none of Plaintiff's impairments, separately or in combination, met or medically equaled the severity of a listed impairment in Appendix 1 of Subpart P, 20 C.F.R. § 404. *Id.*

The ALJ further considered whether Plaintiff's mental impairments constituted per se disability under the "paragraph B" criteria of the federal regulations. (AR 814); *see* 20 C.F.R. § 404.1520a(c)(3). On a scale of none, mild, moderate, marked, and extreme, a claimant that has one extreme mental limitation or two marked mental limitations in four functional areas may satisfy a listed mental disability if other criteria are met. *Ricks v. Kijakazi*, No. 21-cv-00942, 2023 WL 2706569, at *5 (D.N.M. Mar. 30, 2023). In contrast a moderate limitation means a claimant retains a "fair" ability to function in the area independently, appropriately, and effectively. *Id.* The ALJ found Plaintiff had moderate limitations in all four functional areas: understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adopting or managing oneself. (AR 814); 20 C.F.R. § 404.1520a(c)(3). As justification for

each limitation the ALJ referenced the medical opinions and a group of exhibits that he would discuss later in the decision. (AR 814). Because Plaintiff did not satisfy a listed disability the ALJ proceeded to assess Plaintiff's RFC.

**B.     RFC Assessment.**

The ALJ concluded "after careful consideration of the entire record" that Plaintiff could perform "light work," defined by 20 C.F.R. § 404.1567(b),[2] with the following specifications:

> [Plaintiff] is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. He is limited to occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, occasionally balancing, stooping, kneeling, crouching, and crawling. The [Plaintiff] must avoid all exposure to unprotected heights, dangerous machinery, and moving machinery. The [Plaintiff] can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with occasional changes in work setting, maintain concentration [,] persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. He is limited to occasional interaction with coworkers, supervisors, and the general public.

(AR 815). As support for his assessment, the ALJ discussed the following evidence from the record and drew the following conclusions.

   1.     Plaintiff's testimony and examination, treatment history.

Plaintiff testified that prior to his cancer diagnosis he could play sports and run long distances. (AR 816). Post-diagnosis the physical impact of his cancer and treatments included severe chronic pain that impeded his ability to sit, stand, and walk. *Id.* Plaintiff also testified the diagnosis had caused a serious degree of fear that significantly limited his focus and concentration.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

*Id.* The ALJ found Plaintiff's testimony partially persuasive, concluding he did not experience the degree of intensity, persistence, and limiting effects of pain to which he testified. *Id.*

As support the ALJ cited Plaintiff's treatment history for abdominal pain and renal cancer, for which Plaintiff received a successful right partial laparoscopic nephrectomy and took pain medication. *Id.* Three months post-surgery Plaintiff reported to his doctor that his abdominal pain had returned to pre-surgery levels and testing showed no resurgence of cancer. *Id.* Plaintiff also suffered a herniated disc, causing chronic right back pain; MRI tests demonstrated degenerative disc and facet joint disease. (AR 816–17). Plaintiff received pain treatment including prescription medication, physical therapy, and injections. *Id.* Plaintiff reported to his providers that his symptoms improved, and examination showed Plaintiff retained full strength and normal gait but a decreased lumbar range of motion in extension and lateral rotation. *Id.* Plaintiff also had negative straight leg raise testing and paraspinous muscle/facet joint tenderness. (AR 816).

The ALJ reviewed Plaintiff's treatment history for depression and anxiety. (AR 817). The ALJ noted reports of considerable anxiety and major depressive disorder that began with the cancer diagnosis. *Id.* The ALJ noted significant effects of these conditions on Plaintiff's demeanor despite treatment with several different psychotropic medication regiments. *Id.* However, The ALJ also cited several mental status reports from 2019–2023 that reflected "normal" findings for Plaintiff, including intact judgment, alertness, intelligence, speech, grooming, memory, and social interaction. (AR 817–18).

   2. <u>The proffered medical opinions discussed by the ALJ.</u>

The ALJ reviewed the medical opinions of treating providers Christina Carlson, CSNP, William Bacon, PA-C, and Skow, as well as examiners Rochelle Robertson, LHMC, and Dr. Josiah Child, and several consultative state agency medical and psychological professionals. (AR 818–21). For each opinion, the ALJ summarized the findings with respect to Plaintiff's limitations,

found the examiner had supported their own opinion with their treatment notes or examinations, and then stated they were either persuasive or not in comparison to the "overall medical evidence of record." *See id.* The ALJ then cited globally to the exhibits of Plaintiff's mental status reports discussed above. *See id.* For Bacon's and Child's opinions in particular, the ALJ concluded their opinions on Plaintiff's ability to work or perform activities such as shopping or attending appointments encroached on a question legally reserved for the Commissioner. (AR 820). The ALJ adopted or rejected these medical opinions to the extent they were consistent with moderate limitations on Plaintiff's mental functions. (AR 818–21).

**C.     Steps Four and Five.**

At step four the ALJ found Plaintiff's RFC prevented him from returning to his past relevant work as a psychiatric aide. (AR 821). Proceeding to step five and considering Plaintiff's age, education, RFC, and work experience, the ALJ determined that Plaintiff could still perform light work jobs such as car wash attendant, cleaner, or assembler that existed in significant numbers in the national economy. (AR 822). The ALJ concluded that Plaintiff was not disabled and did not qualify for disability benefits. (AR 823).

## IV.     BRIEFING SUMMARY

Plaintiff challenges the ALJ's RFC determination on two grounds. First, Plaintiff argues that the ALJ did not follow the correct legal standards when assessing the persuasiveness of Carlson's, Skow's, and Robertson's opinions. [Doc. 16, at 5, 14]. Specifically, the ALJ did not offer an adequate explanation nor consider the full support for these opinions in the record. *Id.* at 10–14, 17–18. Second, Plaintiff argues that the ALJ failed to address Plaintiff's diagnosis for chronic pain syndrome, a severe impairment, when assessing the credibility of Plaintiff's subjective reports of pain. *Id.* at 19–20, 25.

The Commissioner responds that while the ALJ could have been more "artful" he still adequately explained his reasoning with respect to Carlson's, Skow's, and Robertson's opinions. [Doc. 20, at 15–23]. The ALJ referred to his conclusions that Plaintiff's mental status reports demonstrated intact mental functions to justify his rejection of the medical opinions' more serious findings. [Doc. 20, at 16]. As to Plaintiff's second argument, the Commissioner argues the omission of chronic pain syndrome does not warrant reversal because the ALJ still considered all of Plaintiff's chronic pain. [Doc. 20, at 11–15].

Plaintiff replies that the ALJ's citations to Plaintiff's mental status reports are devoid of analysis and cherry-picked. [Doc. 21, at 5–11]. Regarding chronic pain syndrome, he argues that the omission of his diagnosis as a severe impairment included a failure by the ALJ to discuss its associated symptoms despite what the Commissioner claims. *Id.* at 11–12.

## V.    ANALYSIS

### A.    The ALJ Applied the Correct Legal Standards to Carlson's, Skow's, and Robertson's Opinions and Supported His Analysis with Substantial Evidence.

1.    Relevant law for the assessment of medical opinions in the record.

The ALJ must review all proffered medical opinions on a claimant's limitations and explain how they impacted his RFC assessment. *Vigil*, 805 F.3d at 1201–02. Factors for review include the doctor's examining and treating relationship with the claimant, the support for the opinion, its consistency with the record as a whole, the doctor's specialization, and any other important consideration. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 404.1520c(c). The most critical factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ need not discuss every factor so long as he adequately explains the opinion's persuasiveness. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ may not without justification downplay, mischaracterize, or cherry-pick elements from a medical opinion or otherwise fail to discuss

uncontroverted or significantly probative evidence. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018).

    2.    <u>The ALJ's evaluation of Carlson's opinion.</u>

Carlson assessed that Plaintiff experienced marked limitations in remembering locations and work-like procedures, understanding, remembering, and carrying out detailed instructions, achieving punctuality and regular attendance, sustaining an ordinary routine without supervision, completing a normal workday and week without intolerable interruption, and accepting instruction from and responding appropriately to supervisors. (AR 596–600). Carlson also assessed moderate limitations for responding appropriately to changes in the work setting, asking simple questions and requesting assistance, making simple work-related decisions, and working with or in proximity to others. *Id.* The ALJ found Carlson's "no more than moderate limitation in social interaction and adaptation" persuasive but not the marked limitations in understanding, memory, concentration, and pace. (AR 818). The ALJ explained marked limitations were not "wholly consistent" with the record, referring back to the exhibits demonstrating Plaintiff's "normal" mental functioning. *Id.* Plaintiff argues the ALJ committed legal error by (1) not sufficiently explaining how Carlson's conclusions were inconsistent with the record, (2) failing to discuss the mental testing that supported Carlson's opinion, and (3) calling Carlson's opinion on Plaintiff's social interaction "persuasive" without incorporating the opinion's marked limitation on Plaintiff's ability to respond appropriately to supervision. [Doc. 16, at 10–11]; [Doc. 21, at 5–7].

The Court begins by distinguishing between an ALJ's poor drafting and their failure to adequately support their decision. At several points in his opinion the ALJ sacrificed clarity for brevity by repeating summary language verbatim. (AR 814). The ALJ also made several drafting mistakes such as mixing Plaintiff's pronouns or writing the "claimant" considered Skow's medical opinion, not the ALJ. (AR 817–18). However, the dispositive issue is whether the ALJ explained

his reasoning enough such that the Court can trace his logic. *Keys-Zachary*, 695 F.3d at 1166. The standard of review also prohibits the Court from relying on its own judgment even if it would find the preponderance of the record does not support the ALJ's conclusions. *Lax*, 489 F.3d at 1084.

With those deferential standards in mind, the Court concludes that the ALJ followed the applicable law and substantiated his analysis of Carlson's opinion. First, the ALJ did elaborate on prior mental status reports of Plaintiff from 2019 to 2023 that reflected "normal" findings for Plaintiff's mental capacity. (AR 817–18). The ALJ then relied on references to that discussion through supporting exhibits at both step two and his assessment of medical opinions. (AR 814, 818–821). An ALJ need not reproduce earlier discussions of evidence so long as the reference to that discussion is apparent. *Endriss v. Astrue*, 506 F. App'x 772, 775–76 (10th Cir. 2012). Nor does Plaintiff cite binding precedent establishing global citations, when employed as a summary reference to an earlier discussion, preclude the Court from engaging in meaningful review. [Doc. 16, at 8–9].[3]

Reports demonstrating intact interpersonal interaction, demeanor, judgment, recall, speech, memory, and attention do reasonably suggest that Plaintiff would not experience more than a moderate limitation in his work-related mental functions when called on to use them. Thus, the ALJ addressed the two most important factors—supportability and consistency—by finding Carlson's treatment of Plaintiff supported her assessment that Plaintiff did experience functional limitations but only adopting moderate limitations due the inconsistency of the opinion's severity

---

[3] Plaintiff cites non-binding authority for this premise, including *Martinez v. Berryhill* and *Tenorio v. Berryhill*. [Doc. 16, at 8–9]. These cases are distinguishable. In *Martinez*, the ALJ relied almost exclusively on global cites as opposed to here where the ALJ discussed exhibits with detail and pinpoint cites then summarily referred back to the discussion in other portions of the decision. *Martinez*, No. 18-cv-02203, 2020 WL 6883155, at *2 (D. Colo. Nov. 24, 2020). And in *Tenorio*, the Court found that the ALJ did not explain *at all* what parts of the record were not consistent with or supportive of a medical opinion; the error was especially glaring given the ALJ had used the same medical opinion as justification for her findings at other steps of the decision. *Tenorio*, No. 17-cv-01092, 2019 WL 530016, at *4 (D.N.M. Feb. 11, 2019).

with the "normal" findings of Plaintiff's mental status reports. (AR 818). The ALJ's phrasing of "moderate limitations in social interaction and adaptation" also does not confuse Carlson's opinion of Plaintiff's marked limitation in accepting instruction or criticism from supervisors. (AR 818). Rather, the Court perceives that the ALJ found persuasive only the moderate limitations assessed by Carlson and rejected all others.

Plaintiff argues the ALJ neglected several other parts of the record consistent with Carlson's opinion, including additional testing, treatment, and examination observations. [Doc. 16, at 10–11]. But the ALJ did not fail to consider the exhibits raised by Plaintiff and even cited them when rejecting state agency consultant opinions that recommended Plaintiff had less severe limitations. *Compare id.* (citing exhibits with pin cites to AR 337, 584, 586, 635–36, 652, 757, 1422), *with* (AR 817–18, 820) (discussing same exhibits). The ALJ's decision reflects a weighing of the record, not neglect of probative evidence. Plaintiff counters that other factors favor the examinations consistent with Carlson's opinion, including their methodology and rigor. [Doc. 16, at 10–11]. However, even if persuasive, Plaintiff's argument impermissibly invites the Court to decide for itself evidence's reliability. *Lax*, 489 F.3d at 1084.

3.      The ALJ's evaluation of Skow's opinion.

Skow assessed that Plaintiff had marked limitations in the categories of understanding, remembering, or applying information, adapting or managing oneself, and concentrating, persisting, or maintaining pace with a moderate limitation in interacting with others. (AR 1064). The ALJ found Skow's opinion unpersuasive due to its inconsistency with the same mental status reports discussed with Carlson's opinions. (AR 819). In addition, the ALJ found the support for Skow's opinion was weaker due to an internal contradiction: Skow assessed marked limitations in broad functional areas pertaining to understanding, memory, social interaction, and adaptation despite only finding moderate limitations in their corresponding specific work-related functions.

(AR 819, 1063). Plaintiff argues the ALJ erred because (1) he erroneously required proof of impairments with objective evidence, and (2) he overlooked that the "contradiction" was in fact two distinct assessments Skow performed, one for step two and the other for Plaintiff's RFC. [Doc. 16, at 12–14].

First, the Court does not find that the ALJ required Plaintiff to prove his mental impairments with objective evidence. Generally, "objective" evidence refers to evidence of impairment identifiable by physical examination, diagnostic testing or scanning, or other process that does not rely on the statements of the patient to draw conclusions; "subjective" evidence, conversely, refers to the statements of the patient about their pain level or other symptoms. *Luna v. Bowen*, 834 F.2d 161, 162 & n.2 (10th Cir. 1987). An ALJ may not dismiss an impairment or the severity of its symptoms based solely on the character of the evidence used to prove their existence. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 743–44 (10th Cir. 1993) (reversing ALJ who refused to recognize a chronic fatigue syndrome diagnosis). However, an ALJ still must assess the consistency of a medical opinion with the whole of the record, including relevant objective medical findings. *See* 20 C.F.R. § 404.1520c(c)(2). Plaintiff's argument would imply, contrary to that rule, that an ALJ could *only* consider subjective evidence when evaluating the consistency of a medical opinion similar to Skow's.[4]

Nowhere does the ALJ suggest that reliance on subjective evidence discredited Skow's opinion, especially since the ALJ found the opinion supported by Skow's treating history with Plaintiff. (AR 819). Instead, the ALJ properly weighed competing evidence with respect to

---

[4] Plaintiff somewhat backs away from his objective evidence argument in his reply, arguing the ALJ was too vague about what objective evidence was inconsistent with Skow's opinion. [Doc. 16, at 7]. The Court finds his reply unpersuasive for the same reasons as his arguments regarding Carlson's opinion.

consistency with Skow's opinion. Ultimately the ALJ found moderate limitations more persuasive and relied on substantial evidence to do so.

Second, the Court agrees with Plaintiff that Skow's opinion blends two different analyses, step two's "paragraph B" criteria versus the RFC. (AR 1063–64). However, an RFC's specific work-related limitations must have a logical connection to the broad functional limitations assessed at step two. *See Vigil*, 805 F.3d at 1204. The ALJ reasonably concluded Skow's opinion was contradictory based on the fact Skow assessed, without explanation, significantly less severe RFC limitations than what his paragraph B findings in the same opinion would suggest. (AR 819).

    4.    <u>The ALJ's evaluation of Robertson's opinion.</u>

The ALJ's evaluation of Robertson's opinion followed Carlson's and Skow's, wherein the ALJ concluded that opined limitations exceeding a moderate rating were not consistent with prior mental status reports. (AR 819). Plaintiff reasserts the same arguments with respect to Carlson's and Skow's opinions, claiming the ALJ insufficiently explained his reasoning and the support and consistency of Robertson's opinion in the record with the opinions of Carlson and Skow. [Doc. 16, at 17–18].

However, the ALJ need not discuss every factor for assessing a medical opinion's persuasiveness so long as he adequately explains his reasoning. *Oldham*, 509 F.3d at 1258. Here, the ALJ considered both the supportability and consistency of Robertson's opinion, the two most important factors. 20 C.F.R. § 404.1520c(b)(2). As with Carlson, The ALJ's decision also reflects that he considered the portions of the record Plaintiff asserts were consistent with Robertson's opinion. *Compare* [Doc. 16, at 17], *with* (AR 817, 819). But the ALJ did not err in concluding the opinion was inconsistent with the specific reports he cited. (AR 819). Therefore, the Court cannot conclude the ALJ lacked substantial evidence for his decision. For the same reason, the fact that Robertson's, Carlson's, and Skow's opinions have consistencies with each other and the other

medical opinions does not negate the valid substantial evidence upon which the ALJ relied to moderate his adoption of all three.

**B.     The ALJ Did Not Commit Reversible Error by Failing to Discuss Plaintiff's Chronic Pain Syndrome.**

1.     <u>Relevant law for assessing impairments causing chronic pain.</u>

When assessing a claimant's RFC, the ALJ must consider the limiting effects of all, including non-severe, impairments on the ability to work. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). With regard to a claimant's pain the ALJ first must determine whether objective medical evidence confirms the presence of an impairment that one reasonably could expect to cause the reported pain. *Id.* at 1144 (discussing factors endorsed by *Luna v. Bowen*). Then, the ALJ must evaluate the intensity and persistence of pain asserted by the claimant against the entire record. *Id.* The ALJ may consider relevant points such as the medications taken by the claimant and their reported effectiveness, the claimant's attempts to obtain relief, the frequency of medical contacts, the nature of their daily activities, the "subjective measures" of a claimant's credibility when testifying, and the consistency of evidence. *Id.* at 1145 (citing *Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004)). Courts will not disturb a credibility determination (the "province of the finder of fact") so long as the ALJ offers specific justification supported by substantial evidence. *Hackett*, 395 F.3d at 1173 (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

Chronic pain syndrome can cause pain independent of any other physical impairment. *Bakalarski v. Apfel*, 131 F.3d 151 (Table), 1997 WL 748653, at *2 (10th Cir. 1997). Consequently, both the Tenth Circuit and this Court have held ALJs' failures to consider chronic pain syndrome and its symptoms, even while recognizing other painful impairments, justified remand. *Id.* at *2–3; *Martinez v. Kijakazi*, No. 20-cv-00991, 2022 WL 214539, at *5 (D.N.M. Jan. 25, 2022). At the same time, this Court has held that omitting reference to chronic pain syndrome does not require

remand per se. *Hugg v. Kijakazi*, No. 20-cv-01250, 2022 WL 2751690, at *3 (D.N.M. July 14, 2022) (citing *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009)). In *Hugg* the ALJ did not mention chronic pain syndrome but still addressed the debilitating effects of the claimant's chronic pain so that the omission did not lead the ALJ to neglect the claimant's pain symptoms and effects. *Id.*

      2.    <u>While the ALJ did not address chronic pain syndrome, he did consider Plaintiff's symptoms of chronic pain and adequately supported his analysis.</u>

Here, the parties do not dispute the ALJ failed to recognize Plaintiff's chronic pain syndrome diagnosis as a discrete impairment or to explain the omission from his step two and RFC analysis. [Doc. 16, at 20]; [Doc. 20, at 11]. The Commissioner argues the ALJ still fully considered Plaintiff's symptoms of chronic pain and therefore did not commit reversible error. [Doc. 20, at 11].

The Court agrees with the Commissioner. The ALJ reviewed chronic pain symptoms reported by Plaintiff while he received treatment post-diagnosis of the syndrome. (AR 816–17, 1417, 1439, 1445, 1584). Medical history shows Plaintiff's chronic pain localized in his abdominal and back, both of which the ALJ addressed in the context of Plaintiff's renal cancer and spinal issues. (AR 816–17). The ALJ evaluated Plaintiff's credibility in part by evaluating the effects of Plaintiff's pain in total and the measured success of treatment on his strength, range of motion, and mental status. (AR 817). Furthermore, the ALJ never suggested that Plaintiff's recognized impairments could not account for the level of pain Plaintiff reported. *Id.* In total, the ALJ adequately considered all of Plaintiff's symptoms of chronic pain and its impact on his RFC. *Hugg*, 2022 WL 2751690, at *3. Reversal on the failure to recognize chronic pain syndrome would therefore elevate form over substance. *See Keys-Zachary v. Astrue*, 695 F.3d at 1166.

## VI.    CONCLUSION

The Court finds that the ALJ applied the correct law, supported his findings with substantial evidence, and did not otherwise commit reversible error. The Court **AFFIRMS** the final decision of the Commissioner and **DENIES** Plaintiff's motion to remand.

IT IS SO ORDERED.

_____
Hon. Jerry H. Ritter
United States Magistrate Judge
Presiding by Consent